**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case Number: _____-CV-_____

**ANDRES GOMEZ,**

    **Plaintiff**

**V.**

**GATEWAY DENTAL INC.,**

    **Defendant**

_____/

**COMPLAINT**

ANDRES GOMEZ ("Plaintiff Gomez" or "Plaintiff"), seeks a permanent injunction requiring a change in GATEWAY DENTAL INC. ("Defendant" or the "Company") corporate polices to cause Defendant's website to become, and remain, accessible and in support thereof asserts as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendant and asserts that its website is not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") and Section 504 of the Federal Rehabilitation Act, resulting in a barrier to access the goods and services offered at Defendant's physical brick and mortar dental clinic. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies related to its web- based technologies so that Defendant's website will become, and will remain, accessible. The website at issue is https://www.gatewaydentalclinic.com/ (the"Website").

2. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective. As detailed below, Defendant's Website is once such

1

instance.

3. Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content.

4. Websites must be designed and maintained so screen reading software and other assistive technologies can be integrated into and utilized by disabled individuals.

5. Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access the Website via screen reader software, thus discriminating against disabled individuals with visual impairments, like Plaintiff.

6. Plaintiff has patronized Defendant's Website in the past, and intends to continue to patronize Defendant's Website and Defendant's brick and mortar dental clinic in the future. However, unless Defendant is compelled to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website and having equal access to the goods and services offered at Defendant's brick and dental clinic which visually capable individuals currently enjoy.

7. Furthermore, adherence to an ongoing policy of maintaining accessibility for visually impaired users of Defendant's Website is necessary because websites are typically upgraded and revised on a regular basis. If a continuing policy of maintaining accessibility for visually impaired individuals is not regularly enforced, it is likely Defendant's Website will revert back to the inaccessible format which discriminated against Plaintiff and others with visual disabilities.

8. Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

    a) Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist Defendant in improving the accessibility of the Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

    b) Defendant works with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

    c)    Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

    d)    Defendant works with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendants' Website continues to comply with WCAG 2.0 AA on an ongoing basis; and

    e)    Defendant works with the Mutually Agreed Upon Consultant to evaluate whether the inaccessible website has been rendered accessible, and whether corporate policies related to web- based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 for Plaintiff's claims arising under 42 U.S.C. § 12188.

10. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

11. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

12. Plaintiff Gomez and, at all times relevant hereto, has been a resident of the State of Florida. Plaintiff Gomez is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

13. Plaintiff is disabled as defined by the ADA as he is substantially limited in performing one or more major life activities in that he is limited in using his eyes for accurate sight. As such,

3

Plaintiff is not able to readily utilize the information visually communicated by the Website and utilize any interactive applications on the Website without the use of appropriate screen reader software.

14. Plaintiff uses the term "legally blind" or "blind" to refer to persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some people who meet this definition have limited vision, whereas others have no vision.

15. Plaintiff is legally blind.

16. Defendant is a for profit company doing significant business in this judicial district. Defendant has physical brick and mortar dental locations in this judicial district.

17. Defendant owns, operates and maintains brick and mortar dental facilities in the State of Florida and specifically at 1050 NW 14th St 2nd floor, Miami, FL 33136 which Plaintiff has attempted to frequent, and would successfully do so, if not for the digital barriers that impede his access to the location.

18. Defendant's physical dental facilities offer goods and services to the public. Defendant also offers goods and services to the public through the Website. Defendant's brick and mortar dental facilities and website are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

## FACTUAL BACKGROUND AND ALLEGATIONS

19. The Internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc. for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

20. Blind individuals may access websites by using keyboards in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet.

21. Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the website.

22. The international website standards organization, W3C, has published WCAG 2.0 AA. WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and numerous federal courts as essential for achieving accessibility for individuals with disabilities.

23. Plaintiff is permanently blind and uses one of the most popular screen reader software in the world in order to access the Internet and website content.

24. Through the Website, Defendant offers descriptions of services offered, insurance carriers accepted, address to the dental clinics, and phone number.

25. However, Defendant's website is improperly coded as to dis-allow Plaintiff, and others with visual disabilities, to adequately access this information as the Website is not compatible with the most popular screen reader software.

26. If Defendant's Website were coded properly, Plaintiff would be able to know what the services are, be able to determine the insurance policies accepted, hours of operation of the facility and then travel to said clinic to utilize the currently inaccessible information on the website to patronize the clinic as a sighted person might.

27. However, because the Defendant's Website is not accessible to visually impaired individuals like Plaintiff, Plaintiff is unable to know what exact services are offered at the clinic, unable to determine the clinic locations, unable to determine whether he can afford the services offered, unable to determine the phone

number of the clinic, and therefore unable to patronize Defendant's physical brick and mortar clinic as a sighted person might.

28.     There is a physical nexus between Defendant's website and physical dental clinic in that the website provides the telephone contact information, the actual location of clinics and access to descriptions of dental services found at the location. Plaintiff has been denied access to this information based on Defendant's improperly coded website that is incompatible with Plaintiff's screen reader software and therefore unable to adequately patronize Defendant's brick and mortar clinic in a substantially equal manner to that of a person with full visual faculties.

29.     Despite several attempts to use and navigate the Website, due to the access barriers on the Defendant's Website, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services available on the Website and at Defendant's dental clinic.

30.     The barriers at the Website have caused a denial of Plaintiff's full and equal access multiple times in the past. These digital barriers deter Plaintiff from attempting to use Defendant's website and visiting Defendant's physical brick and mortar dental clinic. However, Plaintiff intends to use the website in the future and access Defendant's dental clinic once the Website becomes accessible.

    a)   Text equivalent for every non-text element is not provided;

    b)   Information about the meaning and structure of the Website's content is not conveyed by more than the visual presentation of content;

    c)   When the sequence in which content is presented affects its meaning, a correct reading sequence cannot be programmatically determined;

    d)   Web pages do not have titles that describe topic or purpose;

    e)   Images on the website are not explained to the user with use of a screen reader program; and,

31.     If the Website were accessible, Plaintiff could independently shop for and research services via Defendant's Website and subsequently travel to receive services at Defendant's brick

and mortar locations like non-disabled individuals currently can, but because of Plaintiff's disability and Defendant's denial to its website and brick and mortar location, Plaintiff cannot.

32. Upon information and belief, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by blind people.

33. If Defendant had an intention to make its Website fully accessible to, and independently usable by blind people, it failed to adequately implement and execute a policy which provides website accessibility to visually impaired and disabled individuals.

34. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to modify its website to correct the discriminatory conditions as set forth herein.

35. The relief requested serves the public interest and the benefit to Plaintiff and the public far outweigh any detriment to Defendant.

36. Without injunctive relief, Plaintiff and other blind individuals will continue to be unable to independently use the Website in violation of their rights under the ADA.

37. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned counsel reasonable attorney's fees, costs, and expenses from Defendant pursuant to 42 U.S.C. § § 12205 and 12117, and Plaintiff is entitled to attorney's fees, costs, and expenses from Defendant.

**CONUT I: SUBSTANTIVE VIOLATION Title III of the ADA, 42 U.S.C. § 12181 *et seq*.**

38. The allegations contained in paragraphs 1 through 40 are re-alleged herein.

39. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.

§ 12182(a).

40. Defendant's dental clinic and integrated website are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

41. There is a physical nexus between Defendant's website and physical dental clinic in that the Website provides the contact information of the clinic, description of services offered, and access to detailed information on the location of the clinic.

42. This information cannot be presented to Plaintiff, and others with visual disabilities, due to the inaccessible nature of Defendant's Website in that the Website is not properly coded to be compatible with common screen reader software utilized by Plaintiff and others with visual disabilities.

43. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

44. By having a website which is not properly coded to be compatible with common screen reader software utilized by Plaintiff and others with visual disabilities, Defendant is in violation of 42 U.S.C. § 12182(b)(1)(A)(i).

45. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

46. By having a website which is not properly coded to be compatible with common screen reader software utilized by Plaintiff and others with visual disabilities, Defendant is in violation of 42 U.S.C. §12182(b)(1)(A)(ii).

47. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such

modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

48. By having a website which is not properly coded to be compatible with common screen reader software utilized by Plaintiff and others with visual disabilities, Defendant is in violation of 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii) and 28 C.F.R. § 36.303(a).

49. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services," including "...accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

50. By having a website which is not properly coded to be compatible with common screen reader software utilized by Plaintiff and others with visual disabilities, Defendant is in violation of 28 C.F.R. § 36.303(b).

51. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is blind and has disabilities that substantially limit the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to Defendant's Website because of his disability. He has not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the

services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

52. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## COUNT II: VIOLATION OF SECTION 504 OF REHABILITATION ACT

53. Plaintiff repeats and realleges the foregoing paragraphs in support of this claim.

54. Plaintiff is a qualified individual with a disability.

55. Upon information and belief, Defendant is a direct recipient of federal financial funding in the form accepting funding from Medicare and Medicaid insurance plans.

56. As a direct recipient of Federal funds and pursuant to Section 504 the Defendant may not afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; 45 CFR § 84.4 (b)(1)(ii).

57. As a direct recipient of federal funds and pursuant to Section 504 the Defendant may not provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others; 45 CFR § 84.4(b)(1)(iii).

58. As a direct recipient of federal funds and pursuant to Section 504 the Defendant may not provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others; 45 CFR § 84.4 (b)(1)(iv).

59. As a direct recipient of federal funds and pursuant to Section 504, Defendant may not (directly or through contractual or other arrangements) utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii)

that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State; 45 CFR § 84.4 (b)(4).

60. As a direct recipient of federal funds and pursuant to Section 504, Defendant is required to evaluate (with the assistance of interested persons including handicapped persons or organizations representing handicapped persons) its current policies and practices and the effects thereof that do not or may not meet the requirements of this part; 45 CFR § 84.6 (c)(1)(i).

61. As a direct recipient of federal funds and pursuant to Section 504, Defendant is required to modify, after consultation with interested persons (including handicapped persons or organizations representing handicapped persons), any policies and practices that do not meet the requirements of this part; 45 CFR § 84.6(c)(1)(ii).

62. As a direct recipient of federal funds and pursuant to Section 504, Defendant is required to take after consultation with interested persons (including handicapped persons or organizations representing handicapped persons), appropriate remedial steps to eliminate the effects of any discrimination that resulted from adherence to these policies and practices; 45 CFR § 84.6 (c)(1)(iii).

63. Due to Defendant's failure to provide an equal opportunity and ensure effective means of participation through its Website, Plaintiff has been and continues to be unable to access the benefits and services provided by Defendant, which is readily available to sighted persons although Defendant receives federal funding without attempting to take remedial action to make its services through its Website accessible. Defendant is therefore in violation of its obligation to comply with Section 504 of the Federal Rehabilitation Act.

64. Section 504 of the Federal Rehabilitation has been law for over 45 years yet Defendant fails to provide nondiscriminatory services to visually impaired consumers that it could have reasonably foreseen

would have used its services. This results in deliberate indifference to the discriminatory conduct it engaged in as prohibited by law.

65. As a result of Defendant's actions, Plaintiff has been injured and suffered emotional pain, suffering, mental anguish, and other nonpecuniary losses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:
a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA and Section 504 of the Federal Rehabilitation Act as described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, blind individuals;
b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501 (b) which directs Defendant to take all steps necessary to bring the Website into full compliance with the requirements set forth in the ADA, and implementing regulations, so that the Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in Paragraph 8 above;
c. Payment of litigation expenses and costs;
d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,
e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Respectfully Submitted,

*/s/ Alberto R. Leal*
Alberto R. Leal
Florida Bar No.: 1002345
The Leal Law Firm, P.A.
8927 Hypoluxo Rd.   #157
Lake Worth, FL
Phone: 561-237-2740
Facsimile: 561-237-2741
E-Mail: al@thelealfirm.com

**ATTORNEY FOR PLAINTIFF**